Case number 18-1279, Enri F. Al-Rahim Hussein Muhammad Al-Nashir Petitioner, Mr. Perry is the Petitioner, Mr. Palmer is the Responder, and that's it. Thank you. Good morning, Your Honor. Good morning. Good morning, Your Honors, and may it please the Court. We ask this Court to vacate the pretrial proceedings in this case because the undisputed record shows that Colonel Vance Bath, who presided over this capital case, violated at least four clear and indisputable rules of judicial conduct. The violation of any of these rules would warrant the vacator of the proceeding, but collectively, they shock the conscience. First, Colonel Spath knowingly concealed facts that called his impartiality into question. Second, he angled for an appointment from the Attorney General at the same time the Attorney General in the Justice Department had a substantial interest in the case before him. Third, he traded on the fact that he was the judge in this capital case for his own personal gain. And fourth, and most seriously, he allowed his personal financial interests to influence how he handled and scheduled this capital case. None of that, what you've alleged, was before the CMCR, right? No, that's not correct, Your Honor. With respect to the first two, first the concealment of facts that called his impartiality into question, and second, the fact that he had been seeking this Attorney General appointment, both of those facts were in front of the CMCR. The CMCR had the same record before it that this Court had when we filed our initial petition. With respect to the third and the fourth, the trading on his judicial service and subsequently how his personal ambitions influenced this case. So why not give it back? There's a new military commission judge, right? Why not kick it back there, create the record? Much of what you're referring to now comes from a FOIA request. Why not create a record there and have it perceived in an orderly fashion in front of a new judge? For at least two practical reasons, and a third, I would say, is an important doctrinal reason. The first practical reason is that the current military commission judge, Colonel Shelley Schools, as the government disclosed in their 28-J letter, is now also appointed as an immigration judge. And so we'd be going back in front of a judge who committed exactly the conduct we're complaining about with respect to Colonel Spaff. Well, isn't she gone now? No, that's not correct, Your Honor. She remains the military commission judge. She has not yet been reassigned by the chief judge of the military commission trial judiciary. Oh. And so that's the first practical problem. We're going in front of a judge who, at a minimum, is going to have a jaundiced view of our arguments here. The second practical problem, though, is the CIMS here ruled on the merits, at least with respect to the first two claims we've raised, which we think are clear and indisputable violations, the withholding of material facts as well as the seeking and appointment, making oneself a suppliant for employment from a party or someone with a substantial interest in the case. So if the mandate rule means anything, it's that, at a minimum, the military commission judge, whomever that may be, is going to have to take that incredibly seriously if not treat it as binding. The third and the doctrinal reason that I think is really quite important here is the kind of concerns that this court pointed out in United States v. Microsoft. You know, judicial misconduct is thankfully quite rare, but when it does happen, all the case law says it has to be stamped out at the earliest possible opportunity because even the whiff of judicial impartiality, even the whiff of judicial bias and misconduct fundamentally compromises the public's faith in the integrity of the judicial system. So in Microsoft, this court had far less clear and indisputable of a record than it has now, and it nevertheless declined to send it back down to the district court, even though the case was already going back down to the district court, and said, no, we have to resolve this now. Well, what's your response to the government's argument that, look, you'd be completely right if the judge here applied for a job in the Defense Department, but this was justice and these cases are prosecuted by the Defense Department. This is a Defense Department commission. The Justice Department is just not involved. Well, at first, I think if he was applying for a job in the Defense Department, we may actually have less of an argument, at least in part because there are certain provisions, at least a military position in the Defense Department, because there are provisions of the Military Commissions Act that prohibit reviewing a judge's conduct on the bench for the purposes of promotion. So if we were still within the Defense Department, we'd at least have some kind of statutory protection. But I think the broader point that Your Honor is getting to is belied by the record from beginning to end. The lead prosecutor, and that's not my characterization, that's General Spath's characterization of this individual. The lead prosecutor is a Justice Department attorney who was personally assigned by the Attorney General, or at least by Attorney General, order to this case. The Attorney General, both as an office and then former Attorney General Sessions, who gave General Spath this appointment, have had routine and important and particular interest. Suppose there wasn't – I'm just trying to test where your mind is here. Yeah. Suppose there wasn't a detailed Justice Department lawyer on the prosecution team. We would have a weaker case. But I still think, at least with respect to that second rule violation – we're still here only talking about one of the four rule violations that the record here unambiguously shows, the uncontested record unambiguously shows. We may have a harder case in that situation, but that's not the situation we have here. Attorney General Sessions, in particular, had a very special and particular interest both in the Military Commissions and our client's case. And we would think any one of these would require vacator of the pretrial proceedings in this case, at least from the time he applied. So is this a case of – maybe your answer to my question is going to be both. Is this a case of an actual inappropriate interest, or is this an appearance problem? We would say this actually meets the high standard of being an actual – that's an often vague line. Your Honor, it's a concurring opinion in the matter of judicial conduct, I think, tried to parcel it between what in actual – in sort of potential bias or appearance of bias, it's sort of the near occasion of bias. Whereas, does someone actually have a bias that they know about creates an actual bias, even if you can't show that – or even if you can't individually point to decisions that were the product of that bias, right? Because it still is an objective test. So the question is, does a reasonable observer, knowing all the facts, would they determine that this decision could have been influenced by bias? To use the Supreme Court's language from Toomey, it's, would there be any temptation to not hold the line of justice neat, clean, and true? What are the orders by Judge Spath that he rendered after he applied to the Department of Justice that were affirmed by the CMCR? What are we talking about here? Affirmed by the CMCR, I think it's probably close to about half a dozen specific orders. Some of these orders – and one of the reasons why – one of the reasons why we're asking for a vacater proceedings as a whole is some of these orders build on one another, and there'll be amended orders or they'll revisit the same issue. So I think, you know, at bottom I think – I'm trying to get at you. You've raised – there's an alternative argument here, right, and that is to vacate his orders entered after he applied to the Department of Justice. I'm just trying to see what that would look like with respect to the CMCR. I think it is a little bit at least unclear. If those orders are vacated, we would argue that the CMCR's initial jurisdiction, which we would also argue was in doubt to begin with, but nevertheless, that their jurisdiction over the interlocutory appeal the government brought from the abatement would probably fall as well, and therefore their decision should at least be vacated by this court. We could probably file a writ of quorum notice seeking the same remedy, but I think it would be simpler. Let me just pursue that a little more. Okay, so there's been a whole series of orders since November – what is it, 2015? Yes. When he applied for the job? That's correct. So I assume some of those orders – I mean, we don't know what they are, but how would we – if we don't want to just vacate all of them – we're all assuming you win here. This is a hypothetical. Absolutely, yes. If you do, do we vacate – why would we vacate them all? Wouldn't we want to know whether some of them may be just ministerial orders that couldn't – that weren't influenced? And also, just to pursue I think what Judge Griffith was getting at, some of the orders affirmed by the CMCR – the CMCR was reviewing at DeNova, right? I believe that's correct. Yes, so why wouldn't those orders be okay? In other words, they've been affirmed by a bias-free appellate body. Because – sorry, I'm sorry – because that's not how bias questions are dealt with. The harm – we don't have to point to prejudice from bias. The prejudice is the bias. It's the fact that my client from at least February or at least November of 2015 – we would argue potentially February of 2015, which is the decision that he ends up using as his writing sample, which is essentially a favorable decision to the government. I think a reasonable observer, looking at all the facts, can see that decision and say, is that influenced by his future career ambitions? Many of the letters of recommendation he received also predate his actual application. But even if we just stick to that November 2015 date, my client was permanently deprived of the right to appear before an unbiased judge. That's the harm. That's the prejudice. And it's an objective test. And that's why this court, you know, in a variety of circumstances – I'll point to the court's decision in Kempthorne, which I think is somewhat analogous in many respects, where you had a special master essentially hire a former employee – or actually hire an employee of one of the parties. And this court said everything that that judge did after he hired – or excuse me, after that special master did, after that employee was hired, has to be vacated because we have no idea how that influence could matter. And again, just returning to the point, the reason why courts such as this court review these issues at the earliest possible opportunity is so that clear decisions can be made. Had the government or Colonel Spatz disclosed these facts on the record back in 2015, we could have litigated them. We could have perhaps built up a different record, although I don't know what unanswered questions are in the record. In reference to his having issued hundreds of orders prior to his application on November 8th, what are we talking about in those prior orders? What's the nature of them? All of this is food for thought. Principally – and we did our best to sort of put together the record and figure out what it would look like if we went back. Principally, the orders from that prior period are a certain number of discovery compelling, the production of discovery orders, a number of rulings on legal motions, such as motions to dismiss. In other words, I'm trying to get this harmless error sort of clarified. These are not ministerial rulings about undisputed matters? No, no. Most of these would be disputed. When they say hundreds of orders, many of those will be, we're going to have a hearing on April 5th or something like that. The majority, I would even reckon to say, are probably that kind of ministerial order. But the substantive rulings run the gamut of discovery orders, legal motions, resources. There were certain conditions of confinement issues that pertained then, have been resolved in one way or another now. That's sort of the universe of orders. But if I could point to one thing just in terms of in thinking about – You started out by saying you were seeking to have this court vacate the pretrial proceedings. Yes, Your Honor. And I think these questions have been trying to define exactly what that would involve. So, you know, I think the default rule that the Supreme Court set out in Lilleberg is to just vacate the proceedings. And that's after a trial. That's after a jury has been impaneled. That's after the significant event of a criminal trial where someone may have been found guilty of a crime, as they were in Skah, a serious crime. And so we start with that remedy as the default, and we say vacate the pretrial proceedings. We counted up the number of days. That sounds significant, and it is, and that's why we're asking for it. But we actually counted up the number of actual hearing days that this case has undergone, and it's about 79. So we're really only asking for what would be an ordinary proceeding about the vacater of about three to four months' worth of hearings and proceedings. And these are all about evidence. Is that what all that is? It's all pretrial stuff? A lot. Some of it is about evidence. Certainly in the pre-Spath period, not that much was actually about evidence. The evidentiary rulings ended up – were more pertinent in the 2015, 16, 17 period. If this all hadn't happened, so you said 70 or 80 days, how much more pretrial work is necessary before trial would begin in this case? I would have – Do you have any idea? The major periods, I think there's still some discovery that's being litigated. The government had not yet provided all of its discovery as of at least September 2017, so I think there's at least some discovery litigation that's left. Is there a trial date? No, there is not a trial date at the time. There was a – I think we still obviously have the Devoir-Dir. There were a lot of motions in Lemonnet. Those hadn't been done yet. I think a handful of other legal motions were still – And when did the Military Commission proceedings begin against Alan DeShirt? So the first round of Military Commission – so really 2008. So we're at the 10-year mark now? Well, yes, and again, that sounds like an awful lot, but I think it's important to remember what happened over the course of those 10 years. At least three of those years were spent after they withdrew the charges unilaterally. The prosecution withdrew the charges unilaterally and then charged him again in 2011. The case proceeded in fits and starts, I think, for the next couple of years. There were about two years of abatement due to two government interlocutory appeals. There's been about a year's change worth of delay based on the current abatement. So, you know, that sounds like an awful lot, but I would actually even compare our case to, for example, the 9-11 case, which began after ours and has not had these kinds of interruptions. We have about 11,000 to 12,000 pages of trial record at this point. The 9-11 case is at least 22,000. So, you know, we're dealing with a really orders of magnitude difference. So you referred to the pre-Spaith period. When did Colonel Spaith first enter this case? He was detailed to preside in July of 2014. So you are not—I know your broadest relief is to go back to square one, but is your second just to go back to scrub the Spaith involvement in this case? Certainly, absolutely. And then the other one is just going back to the period November 8, 2015, the date of his application. I think all three of those are meaningful relief, and based on the— you know, based on any one of these violations, I think this court could look and sort of under the lily-bird factor say, well, we're not going to vacate, you know, to really 2012, but we're going to vacate to either 2014 or sometime in 2015. If I can point to just a few issues that may arise in that line drawing, I think those are perfectly normal remedies in the average case, but I think the compound nature of the misconduct here is really significant and should be taken into account by this court. When lily-bird is talking about, you know, more modest remedies, they're talking about inadvertent breaches of the rules of judicial conduct. These are all deliberate and really quite serious breaches of rules of judicial conduct that go to the integrity of the proceedings. With respect to his application day in November, we know that he began that process sometime earlier, obviously, because we have letters of recommendation, including from a judge on the CMCR at the time, that predate the actual date of the application. We would say if you want to tie it to his application, I think February 2015 is the date of the ruling that he uses as his writing sample. I think that certainly falls within the sweep of the misconduct here. I think a probably more conservative remedy would be to simply say let's remove Spath from the record, which would only go five months before that, six months before that. So let me press you on one other matter, just so I'm clear. In these other cases, the appellate court has been reviewing a trial court whose final determinations it normally reviews in the ordinary course of affairs. Now you're in mandamus before this court in a statutory context where Congress has limited the role of this court as a general matter in terms of reviewing military commission matters. Is there some other entity that ought to be parsing the details of the record and what needs to be scrubbed other than this court, so that even if the writ were to be granted, determining, I realize you could say well it would be all this litigation about that, but I'm just trying to understand where our role starts even if we were to agree you're entitled to the writ. Then is it you're going back before Judge Schools or before a substitute for Judge Schools or you're going back to the CMCR? Is there somebody, some entity in between? I think the very uncertainty in that question suggests why the default remedy generally is just to vacate proceedings and let cases start afresh without the taint of bias and misconduct that we have here. Because I think that is a very difficult question. Ultimately the burden should be on the government with respect to owner to show why good cause exists to start finding these more fine and porcelain remedies. Because the default reason has good reasons behind it too. One is again it gives this court the opportunity to speak clearly and directly and concisely at the earliest opportunity because otherwise the public's faith in the system itself is going to be compromised as long as there's any whiff of misconduct hanging in the air. And then if I could also turn to your Honor's opinion in Scott, what you talked about, and this comes from Lilleberg too, is there's a prophylactic value to these kinds of remedies. Giving a remedy that may seem even extreme under the circumstances such as vacating an entire multi-year civil litigation as was the case in Lilleberg or vacating an attempted murder conviction as was the case in Scott outright, jury verdict, grand jury all, sends an important message to the institutional actors to take this issue, to take whatever issues before the court much more seriously. And I think if there was ever a case in which that kind of message should be sent, it is this one where not only did respondents fight us tooth and nail and even providing discovery so that when we filed our petition we didn't have the record we have today. It was only by serendipity that we saw Colonel Spath and Attorney General Sessions in a newspaper photograph celebrating the accession of a new class of immigration judges that confirmed to us rumors that we had simply heard. And likewise, it was only the serendipity that a reporter filed a FOIA request that we have the record that we have in this case, which is a really, by any objective standard, a shocking record. And ultimately, it's even by serendipity that we now know that Colonel Scholes is an appointee to be an immigration judge. She didn't come forward with that information even after this court picked up this case, even after this court stayed the proceedings in front of her, even after the FOIA request came out. And the seriousness of this issue really, I think, came to a head. So I think the prophylactic value that the default rule serves. Did you know about that before the 28-J letter? We had heard a rumor, I think, at a holiday party. One of our attorneys heard a rumor at a holiday party that Colonel Scholes had become an immigration judge. And so we filed a discovery request to the respondents, I think it was a day or two before Christmas, saying, what's going on? And then the 28-J letter was the first time I had seen the disclosure respecting Colonel Scholes and the dates, which I think are also significant, because she had applied for this job even before she became the military judge in this case. And so there is a – and I would also point to the CMCR's decision, which dealt with this in a summary order and said we had not even shown – at that point we knew he was an immigration judge and we knew he had concealed that, both clear violations of the canons of judicial conduct and the guide on judicial conduct. The CMCR said we hadn't even shown any evidence to call Colonel Spath's partiality into question. So I think there's just a – there was a lack of – there is a lack of seriousness, frankly, in how this issue is being dealt with. You know, rules of – and issues of judicial conduct and bias more generally. I can talk more about those, but this Court certainly has seen in In re Mohammed and in re Cotter a number of instances where questions about judicial partiality, the relationship between a judge and the government and the parties, is just not being dealt with carefully. So if there was ever a case in which the default remedy should be the default, which all the good reasons why the default remedy is the default were in place, we would say it's this one. I see I've grossly gone over my time, but I would ask if I could have a little bit of rebuttal. Thank you. Good morning. Good morning, and may it please the Court. Joseph Palmer for the United States. The CMCR acted within its discretion when it remanded, without prejudice, petitioner's judicial disqualification claim to be resolved in the first instance by the military commission. This Court, as the appellate court two levels up from the military commission, should not be the first court to find the facts and to rule on this issue. Mandamus is an extraordinary remedy. It's available only when the lower court clearly acts outside its authority. When a litigant raises a disqualification claim for the first time in an interlocutory appeal, it's within the discretion of the appellate court to decide to remand that claim to the trial level for the initial ruling on the issue. Actually, this panel said in Indre Mohamed that Mandamus is appropriate during the pendency of a proceeding. Mandamus is appropriate. We're not saying that Mandamus is not an appropriate vehicle for a disqualification claim, but when the trial court has not yet ruled on it, it is within the discretion of the intermediate appellate court of the CMCR to say, as it did here, go back to the military commission, allow the military commission to create a record and to rule on the issue, and if you're unsatisfied with the way the military commission resolves the claim, then come back. The argument is that there's a taint here. There's a taint from Judge Space seeking a position with the Department of Justice without letting anyone know, and then a series of decisions that a reasonable observer would look at. In a way, he was strengthening his application to be an immigration judge. If we agreed with that assessment of the facts here, wouldn't you admit there's a pretty serious taint to the whole process? Well, that would remain fully remediable by the CMCR and by this court, and we think that it's likely that if this case were to go back to the military commission, that it would not be Judge Spath or Judge Schools who would ultimately rule on it. But even if it were, judges rule on decisions regarding their own recusal all the time, and it's within the discretion of an appellate court to decide, let's hear from the judge himself. Let's have him explain why he did what he did. We have here a very experienced military judge. Who is that judge? Is that going to be School? Well, in this case, we think it's likely. The judge who also applied for a job as an immigration judge? Yes. That's who's going to decide this? No, we think it's unlikely that it would be Judge Schools. Don't you need to be a little more certain about that? Because let's come back to that for just a second, okay? Because that relates to, I want to ask you about Alan Asheri's response to your argument that they should go to the judge first. One thing they say is that, look, the CMCR has already said a bunch of things about this issue. That's going to make it very difficult for a military judge to rule to the contrary. In the September 28 order, it said, Alan Asheri has not shown that a reasonable informed observer would find a problem here. And then in the October 11 opinion, it said other things that would make it extremely difficult. And it's retained jurisdiction over this issue. So number one, they say, look, under all these circumstances, no lower court judge, in this case a military judge, is going to be free to take an objective look at this given what the CMCR has already said. That's one. So what's your answer to that? Well, we read the CMCR's action differently, Your Honor. The CMCR's initial denial of the mandamus petition was on the nonexistent record that was then before it. But the CMCR was most clear in its order of November 2, denying the stay, when they stated, and if you'll bear with me, our disposition of Alan Asheri's prior motion does not proclose him from making a motion before the military commission seeking the same relief. If he does and is dissatisfied with the manner in which the new military judge resolves his complaint, Alan Asheri is free to seek review in this court through mandamus, if appropriate. And then, again, on page four of that same order, if Alan Asheri moves to disqualify Judge Spath, the new judge will decide whether Judge Spath acted inappropriately and will enter an order that is consistent with her finding a decision. Alan Asheri is free to ask this court to review the resolution of his motion. He also is free to ask this court to address issues upon which we have ruled to the extent that the military judge's order may implicate them. In short, an orderly and substantive adjudication of Alan Asheri's disqualification arguments in the trial and appellate courts not only is the proper way to proceed, it does no harm to Alan Asheri. So, Your Honor, we think that... That brings me back to the question we had earlier about touch school. How likely is it that a military judge who has also applied for and received a job as an immigration judge and never disclosed that, is going to rule that Judge Spath's behavior violated the code of judicial conduct? Right? How's that going to happen? Well, again, in light of judge school... Because I can understand you saying to us, look, we guarantee you, we're telling the Court of Appeals, the D.C. Circuit today, it won't be judge school, it will be a new judge. Okay, got that. But you're telling us judge school might decide this thing. Yes, we do think that's unlikely in light of her... Well, that's different from saying she's not going to. Yes, that's true. Right? But even if it were to be her, even if Judge Spath were still on the bench, we think it's within the discretion of the CMCR to decide, let's hear from that experienced military judge and his explanation of why he made the decision he made, whether he consulted with any ethics officials within the Department of Defense, and in general, also to create a record on the issue and to make the initial ruling, and then the case could come back. Yeah. So the second thing they point out is that, you know, even if the new judge would consider this, the new judge can't revisit a whole series of very important orders, the 505 orders, that under Rule 949, these ex parte orders regarding evidence are, quote, not subject to a motion for reconsideration by the accused. So they're saying the new judge couldn't touch those. The new judge could reconsider those orders on her own motion or on the motion of the government, and we would have every incentive if we were. . . Oh, you say this is limited to a motion for reconsideration by the accused. Yes. The rule bars motions by the accused, but it does not bar reconsideration by the judge or by the government's motion. We would have every incentive to. . . Would the government make that motion? Can you tell us here that the government would make that motion? We. . . If we were back in the military commission, and in the context of a fashioning of a remedy for a disqualification claim, which is, again, another reason why a remand would be appropriate here, to enable the military commission judge to consider all these orders and decide whether the disqualification issue can potentially become moved or at least narrowed by reconsideration of the family of orders that are truly still in dispute or that are closest in connection to the disqualification issue. And in the event that that's what we were doing in the military commission, then we would agree that as part of fashioning that remedy, that the orders that are covered by this rule that we're talking about, certain orders concerning classified information, it would be appropriate for the judge to reconsider those as part of fashioning that remedy. Let's go back to the antecedent question here. Set aside the question of whether this mandamus, so relief has to be clear and indisputable as well as no other form of relief. What about Alan Sherry's argument that it's just crystal clear here that Judge Spaeth's behavior throughout this whole process violated several well-accepted canons of judicial conduct that you, in your brief, don't challenge at all, concede that they are the right ones? I mean, how do you, what's your best argument that there's some doubt about Judge Spaeth's behavior? Your Honor, we don't think there's any controlling case that clearly and indisputably requires a military judge. That's not the mandamus standard, but go ahead. You don't have to find a case right in point. Is there a case that says that? No, we agree that there doesn't necessarily have to be a case on point. So set that aside and tell us. But there's, we don't think there's any clear statement of a controlling rule that governs when a military judge who is seeking another judicial position within the executive branch necessarily requires recusal. And that's because military judges are, necessarily have, already have an employment relationship with the Defense Department and with the military service who are bringing the case. The impartiality of military judges is not structural. They don't have tenure. They're subject to the same personnel procedures that govern other judge-advocate military officers, and that includes involuntary reassignment, promotion boards. And the Supreme Court in the Weiss case explained, in considering an argument that military judges were, that they needed to have tenure in order to be impartial, the Supreme Court said that their impartiality is guaranteed not by structural independence, but by provisions of the UCMJ that prohibit anyone from attempting to influence the decision of a judge in a case. And those provisions apply to military commission judges as well. And they govern the Department of Justice as much as the Department of the Defense. And so it's not clear that it automatically creates a conflict for military judges when they're inevitably already looking to the Defense Department that has a much closer relationship with the prosecution than the Department of Justice. They're already looking to that department for their next assignment. And military judges routinely discuss in confidence what their next assignment might be. They're in a temporary job as military judges. There doesn't... Judge Tatel's question tried to, I think did sharpen the question, and I need to be clear about this. Is the government challenging that Colonel Spaeth was subject to the ethical standards that counsel recited here this morning in the brief? As I recall, Judge Tatel's question said that the government hadn't challenged that. That's right. That was my question. I think that's...we agree that the recusal is governed by rule of military commission 902 that essentially tracks the section 455A recusal language. But our submission is that those principles need to be construed in light of the fact that it's a military court. I understand. And the series of questions that went on as to this particular case, as opposed to say Colonel Spaeth was seeking to be a hearing officer at the HUD or the Department of Transportation, Department of Labor. This is where the Attorney General himself had been directly involved. And his employees were directly before the judge. That's why I want to be clear, because I thought your latest answers suggest that military judges are not subject to what I'll call the 455 standard. Yes, we agree that they're subject to the standard, but that whether an application creates a conflict needs to be understood in light of the fact that military judges are already employees in the executive branch and that they're looking to the Defense Department for a follow-on assignment. So your argument is that all of the evidence that they've put forward about his application for a job in the Justice Department and the Attorney General's actions, that's all irrelevant because this is just a DOD question, right? And that a reasonable person knowing all the circumstances would understand that? Is that your point? We think that it does need to be understood in light of the military court system. And that's why this Court would benefit from the application of the military expertise of the Military Commission and the CMCR to the question of how these recusal standards work within the military and that their impartiality is primarily protected not by structural independence, but by unlawful influence provisions. When I read your brief, what I understood was your argument is this is DOD, not DOJ. But the fact is that the Justice Department is not as walled off from these proceedings as the impression I got from first reading your brief. I'll give you just two examples. The Military Commission Act itself, I found two references to the role of the Attorney General. 949A says that, quote, the Secretary of Defense in consultation with the Attorney General may make exceptions, and then it goes on to talk about procedures that they can do together. And then 950H says appellate counsel appointed under the Department of Defense Regulations may, when requested to do so by the Attorney General, represent the United States before the U.S. Court of Appeals for the District of Columbia Circuit or Supreme Court. So under the statutes, you've got the Attorney General involved at the beginning in the way they set up the procedures and at the end of the process in terms of authorizing counsel. So it's not as walled off as you suggest in your brief here. Justice seems to be very much involved statutorily in the Military Commission process, and therefore, Al-Nashiri says, Judge Spaeth's interactions with the Justice Department are deeply relevant to whether or not he's impartial. We're not disputing that the Attorney General and the Justice Department have some involvement in the Military Commission. Well, not some. It's pretty significant. But our submission is that whatever level that involvement is, it's much less than the Defense Department. And yet the military judges are employees of the Defense Department, and they're seeking further assignment. We're talking about an appearance of impropriety, right? That's the standard. And the appearance standard requires what would a reasonable person, knowing all the circumstances that could be obtained reasonably, think? And is it your position that a reasonable person, knowing about the involvement of the Justice Department statutorily in the Military Commission proceedings, and also knowing about Judge Spaeth's application for a job, that a reasonable person, and this is an objective standard, wouldn't have some doubts about his impartiality? We think that a reasonable person... Really, your argument? That's our argument, Your Honor, but that that reasonable person needs to be informed about the relevant facts and circumstances, which include the reality that military judges are not protected by structural independence of the executive branch, but instead by unlawful influence provisions. So you're saying this goes on all the time? Well, Your Honor, not necessarily, but only... Our submission really just is that what does go on... But if it did go on all the time, it's okay? What does go on all the time is that military judges don't have tenure, and they're in a temporary assignment... I want to know, does this go on all the time, what Judge Spaeth did? Applying for jobs with the Justice Department while working with... while Justice Department lawyers are appearing in his court, while he's making decisions that would be seen by the Justice Department, while he's applying for a position there, does that go on all the time, or is this an unusual circumstance that we have here? I think it's fair to say that it's an unusual circumstance, simply because ordinarily in a court-martial case, there isn't this involvement of the Justice Department that happens in the military commission. That seems to me to be a rather significant concession that you just made. But I would say what isn't... What makes this case, the answer, unclear, is that the relationship between the Executive Office of Immigration Review and the immigration judge position for which Judge Spaeth applied for isn't a kind of direct involvement in the military commission system. There's no relationship there. And a reasonable person, I don't think, would think that the decision about whether Judge Spaeth would be appointed as an immigration judge in a judicial position where he's expected to be independent would turn on his rendering favorable rulings for the government and the military. But he... when he applied for the job... This is... I just want to describe some of the evidence that troubles me here. When he applied for the job, he used as part of his application the work he was doing as a military judge in this very case. And I assume you would agree that a reasonable person, knowing all the circumstances, would know that also, right? Yes. That's part of the circumstances. Yeah. And also, let me just give you one other example. You know, not only did... And I'm just describing the evidence I see in the record here. Not only did he do that, but he never disclosed to the parties in all the months that he was negotiating with the Justice Department about his job, he never disclosed that fact. And on, for example, February 15th, February 15th, the Justice Department offers Judge Spaeth a start date. Finally, after months of negotiation. Next day, he abates the proceedings and says, gee, it may be time... I'm really frustrated with these proceedings. It may be time for me to retire. I'll let you know soon. He's been talking about retirement for years and never disclosed that to anybody. I just don't see... I get your argument about DOJ being different from DOD and some of the other ones, but if you're just applying the standards of judicial behavior, which you agree in your brief apply here, I just don't see how that passes the Snell test. Well, Your Honor, the... Judge Spaeth's application did include an order from the military commission case, but it was an order that highlighted his independence and that was adverse to the government, in which he abated the case because he felt like the convening authority was potentially attempting to unlawfully influence him. And we think that his references to his military commission and his other judicial service on the Air Force Court were meant to show that he was an experienced and independent judge and wouldn't clearly and indisputably raise an objective. This is an objective standard. I hear your point about his motives may have been totally pure. He may have been trying to show that he was an experienced judge. It's an objective standard. We have to look at this objectively. What would a reasonable person think, right? Next question. Yes, so we think that his application, his experience, was designed to show his independence. And he was applying for a judicial position, not to be a prosecutor in the Justice Department or an attorney who would represent zealously someone's interests, but instead another judicial position. And we don't think that there's a case or practices of judges recusing themselves in analogous circumstances. For example, judges are often considered for positions within the executive branch, including counsel. How many of those cases involve the death penalty? And how does that factor into our approach here? I can only think of one capital case. That's the Ninth Circuit case in Mikell where the judge put his name forward for a position as the U.S. attorney in the district that was prosecuting the case. Now, there's important differences there. The judge ended up disclosing and withdrawing his application. That's a significant difference. Yes. Could you say what you said again about judges seeking jobs in the executive branch? Well, it's common for judges to be considered for positions within the executive branch. And there doesn't appear to be cases or a practice of judges recusing when they're under... I can tell you what many of us think about that, which is that an inquiry from the executive branch to any one of us about our interest in a job would cause an immediate recusal. I mean, if the executive branch wants to offer a judge a job, they offer the job, period. End of matter. I don't know that judges do that. I certainly wouldn't do it. And I don't think most of my colleagues would. Well, I'm just relying, Your Honor, on the fact that judges often become take-up positions in the executive branch or higher positions in the judiciary. And we're unaware of cases for a standard practice of recusal where judges say, I'm being considered for elevation to the Ninth Circuit, and so I'm going to recuse myself now from all cases involving the government in my court. Yeah. Let me ask you a totally hypothetical question. Suppose we think we need to grant this grant, and that... What's your view about the remedy? If we were going to... vacate orders issued by Judge Smith post-November... What is it, 2015? 2015, Your Honor. What's your view about that? Well, we think that in that hypothetical circumstance, that the court should allow the military commission and the CMCR to fashion a tailored remedy. I see. We dispute the opponent's contention that the standard or default remedy is to vacate everything that a judge did. Yeah. This court in Microsoft didn't do that, and it referred to that kind of retroactive blanket vacater of everything as a draconian remedy. And it's appropriate in this circumstance to allow the military commission to tailor a more narrow remedy that would reconsider, if necessary, orders that are truly in dispute or narrow the category of orders down to those that are closest to... Would it be the MCMR... MC... MCMR... The CMCR, Your Honor. CMC. Our view is that it should be the military commission in the first instance, followed by a review by the CMCR, followed by a review by this court. This court sits two levels up. Yeah. Neither court below has yet issued a ruling on the question. And in that circumstance, mandamus is inappropriate because mandamus is designed to confine a lower court... You're going back to your basic argument. Just the relief. So you would want us, if we happen to disagree with you, to send this to the military judge to decide which orders to leave in place and which ones to vacate, right? Yes, and or which ones to reconsider in an effort to create an appropriate remedy. And you're telling us that that judge could reconsider every order, including the ones involving ex parte submissions, right? Yes. We could tailor it that it should be someone other than Judge Schools. We think it is likely that it will be someone other than Judge Schools, but that it wouldn't be outside the discretion of the CMCR to let Judge Schools have the first... No, I understand that, and you're not able to make that commitment. Apparently you weren't authorized to make that commitment before this court. Well, what we have committed, Your Honor, is that if her retirement is approved, that we would not oppose a motion to reassign the case to a different military judge. Well, would you have to? I mean, if she retires, you need another judge, right? Yes. Okay, so that's not a big concession. No. Well, it's a concession to bring it forward whenever the retirement would be. Okay, I see. So what's unknown about her now is that she has an offer but no start date? Is that where that's at? I think what's unknown is, at least to us, Your Honor, is the Air Force must approve the retirement. I see. And as far as we're aware, we don't know whether that's taken place or not. And the assignment of military judge is something where that is a role that's played by the chief judge of the military commission judiciary, and the prosecution doesn't have influence or control institutionally over the judges that are assigned. But, Your Honor, our primary submission really is that the lower court acted within its discretion in not reaching the merits of the issue yet. Neither court below has actually ruled on the case. And that means mandamus is inappropriate because mandamus is where the court says the lower court failed in its responsibility. It did something it wasn't authorized to do. That's true with everything except for appearance issues. Appearance issues are an exception, right? I don't agree with that, Your Honor. We agree that bias does constitute irreparable injury, but it doesn't relieve the normal mandamus standard, which is that the lower court must take an action that it was not authorized to take. And when there's an intermediate appellate court that all it did was say, let's have the trial court decide this first when there's no record before us. If you're unhappy with how the trial court resolves that question, come back. When the intermediate appellate court does that, it hasn't acted outside of its discretion and mandamus should not. Let me read you a sentence from our opinion in Cobell. When the relief sought is a recusal of a judicial officer, the injury suffered by a party required to complete judicial proceedings is overseen by that officer is by itself irreparable. Yes. And to stay in our case, that's like law of the case right now, right? I mean, we've basically said that the injury is just the existing of irreparable injury in this case is binding law. It is law of the case. We agree with that, Your Honor, and that's the reason that that's the argument for why the issue shouldn't have to await final judgment. But what's before the court now is there hasn't been even an initial ruling on interlocutory review. I see. The court is, the intermediate appellate court is permitted to decide, let's have the military commission decide this issue. Let's hear from Colonel Spaff, an experienced military judge, about what happened below. Let's let them apply their military expertise to the different situation of military judges within the executive branch and then come back and we'll rule in the orderly, the ordinary course of appeals, which is that issues are decided at the trial level, then by the CMCR, and only then does this court's review take place. All right, thank you. All right, counsel, the petitioner, give you a couple of minutes. Thank you, Your Honor. If I may, just respond to a few points as quickly as possible. We take strong exception to their characterization of military judges as somehow subject to lesser ethical standards than ordinary judges. And if I can read just one quote from the Court of Appeals for the Armed Forces, and this is in the Roche case we cited at page 26 of our reply brief, page 2169, M.J. 21. The appearance of impartiality may be especially important in the military justice context, and we would say that's correct precisely because the structural insulation is not present. We have to rely on military commission judges in these high-profile capital cases to make decisions that are going to be unpopular to the government, and the public cannot have doubts about their financial interests interfering with their ability to be just. Going to the clarity of the rules, if I may just quickly iterate, and I apologize if this is too quick, but I'd like to get these out. With respect to his failure to disclose, indeed, active concealment of his conduct, we would point to Canon of Judicial Conduct 3D as well as Rule of Military Commission 902D1 and the discussion which talks about the importance of disclosing facts that may call one's impartiality into account. The Supreme Court's decision in Commonwealth Codings, which is an arbitration case, talks about arbitrators. What do you do with your friend's argument that this hasn't been adequately argued or decided at the trial court or the appellate court, that we're at the wrong place to be making these arguments right now? Sure, sure. In this way, we do disagree about what happened at the CMCR. The fact that the CMCR, once this court appeared ready to enter a stay, attempted to backtrack and muddy the record I think doesn't detract from the fact that they did rule quite squarely. Again, if I may read you, Your Honor, just one other quote with your indulgence. The government's argument, they spent about a page and a half to two pages of their brief in the CMCR saying that it should be sent down to the Military Commission. The rest of their 20-page brief was dedicated to the merits, the same merits we've discussed today, and they argued that those merits would not cause, quote, would not cause a reasonable person knowing all the relevant facts to question Judge Spath's impartiality. And the CMCR ruling in a summary order, so we have to assume that under OB Dolla, we assume... Without all the facts that you're alleging now, right? That's the difference. Not all the facts, but the crucial facts. The facts that he had sought this appointment from the Attorney General, that he had received it, and that he had concealed that fact. Those facts were not in dispute when we filed our petition. The subsequent record facts, which are now part of the record from the FOIA documents, only, I think, make the misconduct here that more egregious. And I would also say speak to why the rules regarding post-judicial employment are so clear and were so clearly per se violated. The very policy considerations about the worry of developing these financial ties and having that influence one's handling. But don't you agree that is a distinction that could be made? It's a distinction that could be made, but it's not a relevant distinction, we would say, for the purposes of this Court's review, particularly in terms of restoring the public's faith in the credibility of these proceedings. If I might, with Your Honor's indulgence, just iterate quickly through these. In seeking post-judicial employment, we would point to 902B5A of the Rules of Military Commissions, which is basically comparable to Canon 3C1C of the Judicial Canons of Judicial Conduct, with trading on one's judicial position, which is what his application clearly did, the Canon 2B, and then allowing outside influences to interfere with his handling in a case of particularly financial interests, obviously Toomey v. Ohio, as well as Canon 3 of the Rules of Judicial Conduct. And to the extent, just responding to Your Honor's question as well, a point my friend made, why we should go to the Military Commission. The only fact that they seem to dispute is what was in Colonel Spaff's mind. They say that we're going to have some sort of hearing where he testifies about what he did and why he did it. First of all, I don't think that would improve the public reputation of these proceedings. But second of all, that is completely irrelevant. It's not a subjective test. We don't dig into judges' minds. It's an objective test about what the public would reasonably believe. Finally, if I – sorry. When I asked counsel about these 505 orders that Judge Spaff entered, you've identified about, I don't know, 20 or 30 of them since November. He said the judge could vacate those. Do you agree with that? We think that's probably a strained reading of the rule. I understand why they would want to make that concession here, but certainly that wasn't our impression reading the statute, reading the rules. But doesn't the rule say not subject to – for reconsideration on motion of the accused? Isn't that what it says? Yes, and as I understand the proceedings below that the government contemplates, is that we would say because of misconduct we ask you to reconsider X, Y, and Z rulings. That's the sort of the half measure or quarter measure, we would say, that they're asking to try and remove the taint of these proceedings. I think a plain reading would view that as us seeking to reconsider a ruling, specifically a 505 ruling. They sort of suggested, well, the judge may unilaterally do that, and we don't dispute that necessarily, but I just wanted to be clear about what we understand at least the rule to say. I interrupted you when you said finally. Finally. I apologize, Your Honor. But I would say that finally all these very complicated and hard questions that we talked about and that you spoke about with my friend are precisely why vacater is the default rule. Lilleberg talks about circumstances where that default rule of vacating the proceedings is not appropriate. Here we're dealing with only pretrial proceedings. No jury has been impaneled. No verdict has been reached in these proceedings. There is no risk of taint and error in these proceedings. This court will have much more faith in the record that ultimately comes up on appeal if we have not had to spend months, maybe years, trying to remove the impact of that taint in this capital case. And finally, I would simply say that the importance to the – I hope it's rare to your question to my friend about whether military commission judges or military judges are doing this all the time. I hope it's rare, but the clearest way to ensure it's rare is if this court vacates the proceedings below and sends a clear message that this kind of conduct, this kind of misconduct, is not acceptable in the American judiciary. Thank you. Thank you. Just one question for Mr. Palmer. Yes, Mr. Palmer. Mr. Palmer, just – I just have one question. I'm sorry, I forgot to ask you this before, but it relates to – your argument is that it relates to the FOIA documents, and you say, look, we need to remand this because we don't have the facts, right? That's why you have a trial judge. But are there any facts we don't know that we need to know to decide this case? Your Honor, I think the record would benefit both from the application of the military expertise to those facts. I understand that point. I was asking a different question. I hear what you're saying about that. But I didn't understand – you're not – I didn't see you challenging any – True, these documents came in through a FOIA request. They're not officially in the record. But I didn't hear the government challenging the authenticity of any of the facts. That's correct. We haven't challenged the authenticity of the documents, but we think a factual hearing at which Judge Spath could explain would bring additional facts to the – and his military experience and the military expertise of the courts that consider the issue. Let me be clear, though. Judge Tatel was asking, and I understood it, was the government disputing any facts? Your response was the government is not disputing the authenticity of the documents, which to me is a different issue. I mean, these were documents produced during – in response to the FOIA request. They came from certain agencies, et cetera. But I thought Judge Tatel's question was going to the facts that are in those documents. Well, I don't know how to stipulate to – Well, it's just something you disagree with. That's what we're getting at. We don't dispute the basic facts that are set out in the documents. I don't want to say that everything that might be referred to or that the defendants have said is necessarily true or false. Our primary submission is that that should take place, not for the first time on appeal, but in the military case. Okay, I hear you, but let me just – one more question. So I hear your point that – I get your point that the process might benefit from a military judge looking at these facts first. But you also said, in response to my question, that that military judge could hear testimony from Judge Spaeth. Since we all agree, and you do in your brief, that this is an objective standard, why do we need that testimony? It's an objective standard. It doesn't really make any difference what was in his mind if we all agree on the facts. But I think part of the facts might be his explanation of how things work with respect to military judges and why it was appropriate for him, when seeking another judicial appointment, to emphasize his experience and independence as a judge, but that there wasn't any implication either intended by him or objectively to suggest that – Well, he can't testify about the objective side. I guess my question goes this way, and then we're way over time, but that's my fault, not yours. Let's assume that he testifies convincingly that this is the way things are done in the military and that he was simply trying to explain to the Justice Department that he could really be a good judge if this was totally innocent. What's that got to do with how we apply the objective standard? Because I think the realities of the military personnel system and the fact that judges in the military are – their independence comes from, not from structural independence of the executive branch, but from unlawful influence provisions is relevant to the objective view of the circumstances here. All right. Counsel for Petitioner, do you need a minute just to respond in any way? No, Your Honor. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Tatel, Griffith